Reversed and Rendered and Opinion filed May 4, 2004









Reversed
and Rendered and Opinion filed May 4, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01099-CV

____________

 

AVCO CORPORATION,
TEXTRON LYCOMING RECIPROCATING ENGINE DIVISION OF AVCO CORPORATION, and SPECIALTY HEAT TREAT, INC.,
Appellants

 

V.

 

INTERSTATE
SOUTHWEST, LTD., Appellee

 



 

On Appeal from the 278th
District Court

Grimes County, Texas

Trial Court Cause No. 29,385

 



 

O P I N I O N








This is an accelerated appeal from a
temporary anti-suit injunction obtained by the plaintiff below, Interstate
Southwest Ltd. (AISW@), enjoining two
of the defendants below, AVCO Corporation and Textron Lycoming Reciprocating
Engine Division of AVCO Corporation (collectively ALycoming@), from
prosecuting two suits that they filed in PennsylvaniaCone at law and one
at equityCagainst three corporate affiliates of
ISW:  Interstate Forging Industries (AIFI@), Citation
Wisconsin, LLC, and Citation Corporation. 
Finding that the trial court abused its discretion in granting the
injunction, we reverse the court=s order and
dissolve the injunction.

Background

Lycoming manufactures pistonBdriven aircraft
engines.  Under a Master Supply Agreement
(Athe MSA@), signed in 1995,
IFI agreed to supply all of the rough forgings Lycoming required for making
crankshafts for the engines.  It is
undisputed that the forgings have always been produced in Navasota, Texas.  Originally, the forging facility was operated
as IFI=s Southwest
Division.  ISW contends that in October
1996, it was formed as a Texas limited partnership.[1]  IFI then sold its Southwest Division to ISW
under a ABill of Sale and
Assignment Assumption Agreement.@  Thus, according to ISW, it has been the sole
producer of Lycoming=s rough forgings since 1996.  IFI allegedly ceased to produce forgings as
of that time and, in 2002, was converted into Citation Wisconsin, a holding company,
which is also a defendant in the Pennsylvania cases.  Lycoming maintains that it did not learn of
the assignment until some point in 2002.

Beginning in 1999, crankshafts in Lycoming
engines began to fail.  In 2002, the
Federal Aviation Administration mandated a recall of Lycoming engines to
replace the defective crankshafts. 
Lycoming blames IFI=s forging process
for the defects, and IFI and ISW blame Lycoming=s design specifications.  On October 14, 2002, Lycoming and ISW entered
into a Replacement Crankshaft Production Agreement for the production of
crankshafts to fulfill the recall requirements.








On May 2, 2003, ISW filed suit in Grimes
County, Texas, alleging claims against Lycoming for business disparagement and
breach of contract and seeking declaratory relief regarding the rights and
obligations of the parties under the MSA. 
Specifically, ISW
claimed that Lycoming=s public statements regarding the cause of the crankshaft
failures injured ISW=s reputation and that Lycoming breached the MSA by failing to
pay for certain crankshafts.  ISW further
requested declaratory judgment that ISW was entitled to indemnity from Lycoming
and that ISW was not obligated to indemnify Lycoming.

On May 22, 2003, Lycoming initiated suit
in Pennsylvania against IFI, Citation Wisconsin, and Citation Corporation.[2]  Ultimately, Lycoming brought two actions
against these entities: an action at law seeking over $75 million in damages
allegedly incurred as a result of the recall, and an action in equity
requesting injunctive relief to force IFI to continue producing crankshafts
under the MSA.  In the damages action,
Lycoming also alleged that Citation breached the MSA by causing its subsidiary,
ISW, to file the Texas action in violation of a mediation clause.[3]  Lycoming initially requested that the
Pennsylvania court direct Citation to have ISW dismiss the Texas action pending
mediation, but this request was subsequently withdrawn.

On May 23, 2003, a day after filing the
Pennsylvania praecipe, Lycoming answered in the Texas litigation, asserting
that ISW lacked standing to bring suit under the MSA because IFI, not ISW, was
the signatory.  On June 24, ISW filed an
amended petition in the Texas lawsuit, claiming that IFI had assigned all of
its rights and obligations under the MSA to ISW and that ISW was
attorney-in-fact for IFI on all matters pertaining to the MSA.  The amended petition further requested a
declaratory judgment that the assignment was valid.

On June 12, 2003, the parties to the
Pennsylvania litigation entered into, and the judge signed, an Agreed Order for
Preliminary Injunction, requiring IFI, Citation Wisconsin, and Citation
Corporation to continue to produce all crankshaft forgings ordered by
Lycoming.  When forgings were not timely
produced, Lycoming filed a motion for contempt in the Pennsylvania court on
August 13, 2003.[4]








On September 5, 2003, the Texas district
judge signed a temporary restraining order requiring Lycoming to immediately
cease prosecution of the Pennsylvania lawsuits. 
Lycoming then wrote two letters to the Pennsylvania court, essentially
informing the court of the Texas TRO and stating that Lycoming did not intend
to violate the TRO; the letter suggested that the Texas TRO did not restrain
the Pennsylvania court from enforcing its own orders sua sponte.  The Pennsylvania court then ordered the
contempt proceeding to go forward as scheduled. 
All parties to the Pennsylvania lawsuits appeared at the hearing and
announced ready, and no party objected to the proceedings based on the Texas
TRO.  Before any evidence was received,
however, the parties agreed to a production schedule, and an agreement to that
effect was memorialized on the record.

On September 25, 2003, after an
evidentiary hearing, the Texas trial court entered a temporary injunction
expressly prohibiting Lycoming from prosecuting the Pennsylvania lawsuits and
requiring it to file any pleadings necessary to obtain a stay, abatement, or
dismissal of the Pennsylvania lawsuits pending final judgment of the Texas
court.  In its order, the court
specifically found, inter alia: (1) that IFI had assigned to ISW all of
its rights and obligations under the MSA; (2) that Lycoming knew or should have
known of the assignment no later than October 14, 2002, and either consented to
the terms, waived the right to complain, or was otherwise estopped from
asserting lack of consent as a defense to the assignment; (3) that Lycoming
subsequently filed the Pennsylvania lawsuits with full knowledge of the
assignment; (4) that the legal and factual issues in the Pennsylvania lawsuits
were substantially similar to those raised in the Texas lawsuit; (5) that
Lycoming sought to stay the Texas lawsuit by its actions in the Pennsylvania
lawsuits; (6) that Lycoming prosecuted a motion for contempt in Pennsylvania
despite issuance of the Texas TRO; (7) that unless the prosecution of the
Pennsylvania lawsuits was immediately enjoined, ISW=s rights would be
adjudicated by a foreign court in multiple lawsuits in which it was not a
party; and (8) that prosecution of the Pennsylvania lawsuits threatened the
jurisdiction of the Texas court, violated important public policies of Texas,
and was vexatious and harassing to ISW.








Anti‑suit Injunctions

In reviewing the issuance of a temporary
antiBsuit injunction,
we utilize an abuse of discretion standard. 
Christensen v. Integrity Ins. Co., 719 S.W.2d 161, 163 (Tex.
1986).  Although courts of this state
have the power to enjoin parties from filing or pursuing lawsuits in other states,
the principle of comity requires that courts exercise this equitable power
sparingly and only in very special circumstances.  See Golden Rule Ins. Co. v. Harper,
925 S.W.2d 649, 651 (Tex. 1996); Christensen, 719 S.W.2d at 163.[5]  There are no precise guidelines for judging
the propriety of an antiBsuit injunction; the circumstances of each
situation must be carefully examined to determine whether the injunction is
necessary to prevent an irreparable miscarriage of justice.  Gannon v. Payne, 706 S.W.2d 304, 307
(Tex. 1986).  Generally, antiBsuit injunctions
are appropriate in four instances: (1) to address a threat to the court=s jurisdiction;
(2) to prevent the evasion of important public policy; (3) to prevent a
multiplicity of suits; and (4) to protect a party from vexatious or harassing
litigation.  Golden Rule, 925
S.W.2d at 651.  A party seeking such an
injunction must establish that Aa clear equity
demands@ the
injunction.  Id.  A single parallel proceeding in a foreign
forum does not constitute a multiplicity of suits and cannot, by itself,
justify the issuance of an anti-suit injunction.  Id. at 651B52; Gannon,
706 S.W.2d at 307.

AVery Special
Circumstances@








As stated, before an anti-suit injunction
can properly issue, the requesting party must demonstrate that Avery special
circumstances@ exist such that an injunction is
necessary to prevent an Airreparable miscarriage of justice.@  See Golden Rule, 925 S.W.2d at 651; Gannon,
706 S.W.2d at 307.[6]  ISW=s primary claim to
very special circumstances does not fall neatly into the four Golden Rule categories.  925 S.W.2d at 651.  ISW contends that the gravamen of its request
for an injunction lies in the fact that its interests are being tried in
abstentia in the Pennsylvania lawsuits. 
Specifically, ISW asserts that because it is the only entity, between
itself and the Pennsylvania defendants, capable of making Lycoming=s rough forgings,
any rulings made by the Pennsylvania court regarding production of the forgings
necessarily affect ISW=s interests.








ISW=s argument is
self-defeating.  It is a basic tenet of
American jurisprudence that before a court can affect a person=s interest in
in personam litigation, that person must either be a party to litigation
before the court or in privity to a party in litigation before the court.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969); Hansberry
v. Lee, 311 U.S. 32, 40B41 (1940); Chem. Bank v. City of Seattle, 955 F.2d
1268, 1277-78 (9th Cir. 1992); Amstadt v. U.S. Brass Corp., 919 S.W.2d
644, 652-53 (Tex. 1996).  Therefore, in order
for ISW to be held to orders or judgments issued in the Pennsylvania lawsuits,
either it must be a party to the Pennsylvania lawsuits (which it claims it is
not) or it must be in privity to a party in the Pennsylvania lawsuits (which it
does not specifically address).  Further,
even if in privity with a party, ISW still could not be held to the court=s judgment or
order unless the requirements of claim or issue preclusion were met.[7]  Hence, either (1) the Pennsylvania lawsuit
cannot affect ISW=s interests, or (2) ISW=s interests are
represented in the Pennsylvania lawsuits by a party in privity with it. 
See Amstadt,
919 S.W.2d at 653.[8]  Thus, ISW=s argument that an
antiBsuit injunction
can properly issue because its interests are being tried in Pennsylvania in
abstentia is without merit.[9]

In addition to this primary argument, ISW
also raises arguments related to the four categories identified by the Texas
Supreme Court as appropriate situations for issuance of an anti-suit
injunction, i.e., (1) to address a threat to the court=s jurisdiction;
(2) to prevent the evasion of important public policy; (3) to prevent a
multiplicity of suits; or (4) to protect a party from vexatious or harassing
litigation.  Golden Rule, 925
S.W.2d at 651.  We will discuss each in
turn.

Threat to Jurisdiction








Without explaining its reasoning, the
trial court specifically found that the prosecution of the Pennsylvania cases
by Lycoming was a threat to its jurisdiction. 
ISW argues primarily that Lycoming=s motion
requesting that the Pennsylvania court compel Citation Corporation to cause ISW
to dismiss the Texas lawsuit constituted a direct threat to the Texas court=s
jurisdiction.  This request, however, was
withdrawn in the Pennsylvania court before the Texas court issued its antiBsuit
injunction.  See Gannon, 706
S.W.2d at 307 (noting trial court could have delayed issuing its injunction to
give party time to comply with stipulation that it would drop injunction
request in foreign suit).  Nevertheless,
ISW insists that because Lycoming could have renewed this request at any time, there
was still a lingering threat to the court=s
jurisdiction.  But if such a potential
threat was enough to support an anti-suit injunction, then such injunctions
would be attainable in every case where two parties have filed against each
other in different jurisdictions, because one of the parties could always
request that one of the courts order the other party to dismiss its lawsuit.[10]  Furthermore, at the time the Texas court
issued the injunction, not only had Lycoming withdrawn the request in
Pennsylvania, its counsel had also stated on the Texas record that it would not
renew the request.  See id.  Accordingly, there was no continuing threat
to the court=s jurisdiction warranting an anti-suit
injunction.








ISW additionally asserts that Lycoming
threatened the court=s jurisdiction when it proceeded with the
contempt hearing in Pennsylvania in violation of the Texas court=s TRO.  Whether or not Lycoming violated the Texas
TRO might be relevant in a contempt proceeding for violation of the TRO, but it
is not particularly germane to issuance of the anti-suit injunction.  Although a Texas court may use an anti-suit
injunction to enjoin a party from pursuing litigation in a sister state, our
courts have no authority to control the actions of foreign courts.  See Gannon, 706 S.W.2d at 306-07; see
generally Baker v. Gen. Motors Corp., 522 U.S. 222, 236 (1998) (A[A]ntisuit
injunctions regarding litigation elsewhere, even if compatible with due process
as a direction constraining parties to the decree, in fact have not controlled
the second court=s actions regarding litigation in that
court.@).  The Pennsylvania court ordered Lycoming and
the other parties to appear at a contempt hearing regarding an alleged
violation of one of its orders.[11]  Lycoming was then in a CatchB22, requiring it
to either violate the Texas TRO or the Pennsylvania order to appear.  ISW suggests that Lycoming should have then
objected to the Pennsylvania contempt proceedings, but it is clear from the
record that the Pennsylvania trial court knew about the Texas TRO and knew that
Lycoming believed that the TRO affected the contempt proceedings.  Further objection was unnecessary.

Moreover, the issue of objection is moot
because the Pennsylvania contempt proceedings never reached the merits of the
dispute; the parties yet again agreed to a production schedule.  Nothing in the Texas TRO expressly prevented
Lycoming from agreeing to a production schedule with IFI.  It must also be noted that the contempt
proceeding itself was based on the alleged failure of the Pennsylvania
defendants to perform in accordance with an earlier agreed order regarding
production of forgings.  Because the
production of forgings by those parties under that order is not at issue in the
Texas lawsuit, the Pennsylvania contempt proceeding was not a threat to the
Texas court=s jurisdiction.[12]  Accordingly, we find that there was no
ongoing threat to the trial court=s jurisdiction
sufficient to support an anti-suit injunction.

Evasion of Public Policy

Without specifying particular policies,
the trial court found that Lycoming=s prosecution of
the Pennsylvania lawsuits violated important public policies of Texas.  ISW argues that Lycoming violated (1) its
right to access the courts, (2) the policy that favors the plaintiff=s choice of forum,
and (3) the policy that requires a request for injunctive relief to be filed in
the county of the opposing party=s domicile.








Regarding the first contention, ISW=s right to access
the courts is not impinged by prosecution of the Pennsylvania lawsuits, as
evidenced by the fact that ISW has filed suit in a Texas court and is not being
prevented from prosecuting that action.  See Golden Rule, 925 S.W.2d at 651
(holding prosecution of parallel or mirror image suit was not by itself sufficient
to justify anti-suit injunction).[13]

Regarding choice of forum, Texas courts
generally favor the plaintiff=s choice when
deciding intrastate venue questions.  See
Wilson v. Texas Parks and Wildlife Dept., 886 S.W.2d 259, 260‑61
(Tex. 1994).  However, the mere fact that
a plaintiff chose a Texas forum and the defendant subsequently filed a mirror
image suit in a sister state does not by itself support issuance of an
anti-suit injunction; both suits may continue unabated.  See Golden Rule, 925 S.W.2d at 651‑52.  Additionally, in the present case, many of
ISW=s claims are defensive
in nature, seeking declaratory judgment that would defeat Lycoming=s affirmative
claims.  The nature of ISW=s claims weighs
against a general policy favoring a Texas venue.[14]








Regarding ISW=s third argument,
when pleadings in a Texas lawsuit show that issuance of a permanent injunction
is the principal relief sought, venue is mandatory in the county of the
defendant=s domicile.  See In re City of Dallas, 977 S.W.2d
798, 803 (Tex. App.CFort Worth 1998) (orig. proceeding).  However, Lycoming=s Pennsylvania
equity action does not name ISW as a party. 
ISW provides no authority that would require mandatory venue in the
domicile county of an entity not a party to the lawsuit.  If the Pennsylvania defendants wish to assert
that the equity action against them is improper because ISW is in some way the
real party in interest, they are free to make that claim in the Pennsylvania
court.  See generally Lone Starr
Multi Theatres, Inc. v. State, 922 S.W.2d 295, 297B98 (Tex. App.CAustin 1996, no
writ) (stating that under Texas law all parties against whom an injunction must
run should be named in a suit for injunctive relief).  A Texas court is without authority to tell a
Pennsylvania court whether the Pennsylvania court is the proper venue for a
lawsuit. See Baker, 522 U.S. at 236; Gannon, 706 S.W.2d at
306-07.  Accordingly, we find that the
continued prosecution of the Pennsylvania lawsuits does not violate those
policies of the state of Texas identified by ISW.

Multiplicity of Suits

Although in its order the trial court
mentions that there are multiple foreign lawsuits, it stops short of suggesting
the anti-suit injunction was justified on that basis.  Likewise, ISW does not make this argument on
appeal.  Typically, the multiplicity
argument supports issuance of an anti-suit injunction when a party files
numerous lawsuits to relitigate issues in different courts.  See, e.g., Tri-State Pipe & Equip.,
Inc. v. S. County Mutual Ins. Co., 8 S.W.3d 394, 401 (Tex. App.CTexarkana 1999, no
pet.); In re Estate of Dilasky, 972 S.W.2d 763, 767 (Tex. App.CCorpus Christi
1998, no writ).  Here, Lycoming filed two
lawsuits in Pennsylvania, one in equity and one in law.  These separate actions do not qualify as Amultiple suits@ under Golden
Rule.  Pennsylvania continues to
recognize certain distinctions between legal and equitable actions that Texas
no longer recognizes.  See 2 Standard Pa. Prac. '' 6:11, 7.13
(discussing distinctions between legal and equitable actions and remedies under
Pennsylvania procedure).  Under Texas
procedure, the two lawsuits would have been combined in one action.  See Tex.
R. Civ. P. 51 (AThe plaintiff in his petition . . . may
join as independent or as alternate claims as many claims either legal or
equitable or both as he may have against an opposing party.@).  The Pennsylvania lawsuits therefore
essentially constitute just one action. 
Under these circumstances, we decline to hold that a multiplicity of
suits supports issuance of the anti-suit injunction.    See Golden Rule,
925 S.W.2d at 651; Gannon, 706 S.W.2d at 307-08.

 








Vexatious or Harassing Litigation

The trial court further found that
prosecution of the Pennsylvania lawsuits is vexatious and harassing to
ISW.  ISW contends that these lawsuits
were vexatious and harassing because Lycoming sought to force dismissal of ISW=s Texas lawsuit
and to determine ISW=s rights in abstentia.  These arguments are mere reiterations of
arguments previously disposed of regarding the alleged threat to the trial
court=s jurisdiction and
the power of the Pennsylvania court to affect ISW=s interests in
abstentia.  As explained above, the
request to have the Texas case dismissed had been withdrawn by the time the
hearing on the anti-suit injunction commenced, and Lycoming stated on the
record that it would not renew the request. 
Thus, the abandoned request cannot support issuance of the anti-suit
injunction.  See Gannon, 706
S.W.2d at 307.  Also, as explained above,
either ISW=s rights cannot be affected by the
Pennsylvania proceedings or its rights are adequately represented by a party to
the proceedings that is in privity with it. 
See Chem.
Bank, 955 F.2d at
1277-78.  Thus, ISW=s in abstentia claim
does not support issuance of the anti-suit injunction.

ISW further argues that Lycoming=s decision to sue
entities Awith no involvement in the forging process@ also supports the
vexatious and harassing finding. 
However, the only entities that could be vexed or harassed by Lycoming=s lawsuits are the
parties to those lawsuitsCIFI, Wisconsin Citation, and Citation
Corporation.  ISW cannot be vexed and
harassed because it is not a party.[15]








Lastly, ISW contends that Lycoming=s prosecution of
contempt charges against the Pennsylvania defendants supports a finding of
vexatious and harassing litigation.  It
was the Pennsylvania defendants themselves who agreed to produce forgings.  ISW fails to explain how an attempt to compel
the Pennsylvania defendants to do what they (and not ISW) agreed to do is
vexing and harassing toward ISW. 
Furthermore, a Texas court has no power to prevent a Pennsylvania court
from enforcing its own orders.  See
Baker, 522 U.S. at 236; Gannon, 706 S.W.2d at 306-07.  This record does not support the finding that
Lycoming filed the Pennsylvania lawsuits with the intent to vex or harass ISW.

Conclusion

Because the record does not support the
conclusion that (1) the circumstances of this case fit within the four Golden
Rule categories or (2) very special circumstances exist to justify issuance
of an anti-suit injunction, we hold that the trial court abused its discretion
in issuing the injunction.

Accordingly, the trial court=s order granting
the anti-suit injunction is reversed and the injunction is dissolved.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed May 4, 2004.

Panel
consists of Chief Justice Hedges and Justices Frost and Guzman.











[1]  ISW=s general partner is Texas Steel Corporation, and its
limited partner is ISW Texas Corporation. 
Neither of these entities is a party in either the Texas or the
Pennsylvania lawsuits; however, Texas Steel Corporation is apparently a
subsidiary of Citation Corporation, which is a party to the Pennsylvania
lawsuits.





[2]  Suit was
commenced by the filing of a Praecipe for Writ of Summons under Pennsylvania
procedure, which allows a complaint to be filed later.  See Pa.
R.C.P. 1007.





[3]  Neither
Citation Corporation nor ISW were signatories to the MSA.





[4]  ISW maintains
that any failure to meet scheduled production was the result of equipment
malfunctions and was not limited to forgings for Lycoming.





[5]  AComity@ has been defined as Aa
principle of mutual convenience whereby one state or jurisdiction will give
effect to the laws and judicial decisions of another.@  Gannon v.
Payne, 706 S.W.2d 304, 307 (Tex. 1986) (quoting New Process Steel Corp.
v. Steel Corp. of Tex., 638 S.W.2d 522, 524 (Tex. App.CHouston [1st Dist.] 1982, no writ)).





[6]  See also
Am. Int=l Specialty Lines Ins. Co. v. Triton Energy Ltd., 52 S.W.3d 337, 343 (Tex. App.CDallas 2001, pet. dism=d
w.o.j.) (finding very special circumstances existed where insurer violated
policy clause by filing suit in California).





[7]  Issue
preclusion, or collateral estoppel, precludes relitigation of particular issues
already resolved in a prior litigation, and it requires that (1) the facts
sought to be litigated in the second action were fully and fairly litigated in
the first action, (2) those facts were essential to the judgment in the first
action, and (3) the party against whom the doctrine is asserted was a party, or
in privity to a party, in the first action. 
Sysco Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801-02 (Tex. 1994).  Claim preclusion, or res judicata, precludes
relitigation of claims that have been finally adjudicated, or that arise out of
the same subject matter and that could have been litigated in the prior action.  Amstadt, 919 S.W.2d at 652.  It requires proof of: (1) a prior final
judgment on the merits by a court of competent jurisdiction, (2) identity of
parties or those in privity with them, and (3) a second action based on the
same claims as were raised or could have been raised in the first action.  Id.





[8]  There is some suggestion in the
briefing and the record that ISW might be in privity with IFI because IFI
assigned all of its rights and obligations under the MSA to ISW and that under
the assignment agreement ISW became attorney-in-fact for IFI regarding all
matters pertaining to the MSA.  There is
also a suggestion that Citation Corporation is an Aindirect corporate parent@ of ISW, although there is no
explanation of this relationship or how it could give Citation control over ISW=s production of forgings, through
piercing of the corporate veil or otherwise. 
We need not decide any of the privity or corporations questions
presented by these circumstances because, as explained above, if ISW is in
privity with any of the Pennsylvania defendants then its interests are
represented in the Pennsylvania lawsuits, but if it is not in privity with any
of the Pennsylvania defendants then its interests are not being tried in the
Pennsylvania lawsuits.  If IFI and
Citation Corporation wish to contend that they are not proper parties but ISW
is a proper party, they can do so in the Pennsylvania lawsuits.  That issue is beyond the scope of the Texas
lawsuit before us.  Whether or not the elements of claim or issue
preclusion can be met under these facts is likewise beyond the scope of this
appeal.  See infra note 9.





[9]  Furthermore, the possibility of
inconsistent judgments in the Texas and Pennsylvania lawsuits does not in and
of itself warrant an anti-suit injunction by either court.  See Gannon, 706 S.W.2d at
307.  Once a final judgment is reached in
one of the actions, principles of full faith and credit, comity, issue
preclusion, and claim preclusion dictate that the second forum is obligated to
respect the prior adjudication, so that even if both proceedings continue there
should be only one judgment recognized in both forums.  Cf. id.  





[10]  Indeed, under
ISW=s argument, its request for an anti-suit injunction
against Lycoming in Texas would have been sufficient grounds for the
Pennsylvania court to grant such an injunction in the Pennsylvania
litigation.  This would turn pursuit of
an anti-suit injunction into a completely circular and potentially
self-defeating endeavor.





[11]  The underlying
order at issue in the Pennsylvania contempt proceeding, the motion for
contempt, and the originally scheduled hearing date for the contempt proceeding
all predate issuance of the Texas TRO. 
The Texas TRO was obtained after the Pennsylvania court sua sponte rescheduled
the hearing but before the hearing actually took place.





[12]  ISW asserts
that the original agreed order included a provision stating that the Pennsylvania
defendants had to produce forgings only to the extent they were required to do
so under the MSA.  ISW then argues only
it and not the Pennsylvania defendants were still required under the MSA to
produce forgings.  If these two
assertions are true, they could perhaps be used as a defense against contempt
proceedings in Pennsylvania, but they are not grounds for issuance of a Texas
anti-suit injunction.  We further note
that ISW=s interpretation of the agreed order is
questionable.  The order actually states:
A[IFI, Citation Wisconsin, and Citation Corporation]
shall produce and provide all crankshaft forgings ordered by [Lycoming]
pursuant to the [MSA].  Nothing in this
Order shall be construed to expand, limit or amend the provisions of the [MSA].@





[13]  The open
courts provision of the Texas Constitution is traditionally interpreted as
creating three guarantees: (1) courts must actually be open and operating, (2)
citizens must have access to those courts unimpeded by unreasonable financial
barriers, and (3) meaningful legal remedies must be afforded to our citizens,
so that the legislature may not abrogate the right to assert a well‑established
common law cause of action unless the reason for its action outweighs the
litigants= constitutional right of redress.  Tex.
Const. art. I, ' 13; Tex. Ass=n
of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 448 (Tex. 1993).





[14]  The discussion
of this issue assumes without deciding that ISW is ultimately correct that the
claims against the Pennsylvania defendants are similar to claims Lycoming would
bring against ISW.  If the claims are not
the same, then an anti-suit injunction would clearly be improper.  See Christensen, 719 S.W.2d at 163
(reversing anti-suit injunction because California lawsuit raised issues and
involved parties different from those in the Texas lawsuit).





[15]  A persistent
theme of ISW=s arguments, as specifically expressed in oral
argument, is that the anti-suit injunction is justified by Areal life reality.@ Unless Areal life reality@
comports with Texas law and common logic, it cannot support the
injunction.  We are not privy to the
parties litigation and business strategies, nor is it our place to
inquire.  We just apply the law.