AVCO CORPORATION, Textron Lycoming Reciprocating Engine Division of AVCO Corporation, and Specialty Heat Treat, Inc., Appellants

v.

INTERSTATE SOUTHWEST, LTD., Appellee.

No. 14–03–01099–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 4, 2004.

Rehearing Overruled Oct. 7, 2004.

---

**9.** *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162–71, 92 S.Ct. 839, 843–48, 31 L.Ed.2d 110 (1972).

Jack G. Carnegie and Joshua Lee Fuchs, Houston, for Appellants.

C.J. Kling, College Station, Julia Anderson Cook, Houston, Carlton Bryan Cantrell, Hustsville, and Leane Capps Medford, Dallas, for Appellees.

Panel consists of Chief Justice HEDGES and Justices FROST and GUZMAN.

**OPINION**

ADELE HEDGES, Chief Justice.

This is an accelerated appeal from a temporary anti-suit injunction obtained by the plaintiff below, Interstate Southwest Ltd. ("ISW"), enjoining two of the defendants below, AVCO Corporation and Textron Lycoming Reciprocating Engine Division of AVCO Corporation (collectively "Lycoming"), from prosecuting two suits that they filed in Pennsylvania—one at law and one at equity—against three corporate affiliates of ISW: Interstate Forging Industries ("IFI"), Citation Wisconsin, LLC, and Citation Corporation. Finding that the trial court abused its discretion in granting the injunction, we reverse the court's order and dissolve the injunction.

***Background***

Lycoming manufactures piston-driven aircraft engines. Under a Master Supply Agreement ("the MSA"), signed in 1995, IFI agreed to supply all of the rough forgings Lycoming required for making crankshafts for the engines. It is undisputed that the forgings have always been produced in Navasota, Texas. Originally, the forging facility was operated as IFI's Southwest Division. ISW contends that in October 1996, it was formed as a Texas limited partnership.[1] IFI then sold its Southwest Division to ISW under a "Bill of Sale and Assignment Assumption Agreement." Thus, according to ISW, it has been the sole producer of Lycoming's rough forgings since 1996. IFI allegedly ceased to produce forgings as of that time and, in 2002, was converted into Citation Wisconsin, a holding company, which is also a defendant in the Pennsylvania cases. Lycoming maintains that it did not learn of the assignment until some point in 2002.

Beginning in 1999, crankshafts in Lycoming engines began to fail. In 2002, the Federal Aviation Administration mandated a recall of Lycoming engines to replace the defective crankshafts. Lycoming blames IFI's forging process for the defects, and IFI and ISW blame Lycoming's design specifications. On October 14, 2002, Lycoming and ISW entered into a Replacement Crankshaft Production Agreement for the production of crankshafts to fulfill the recall requirements.

On May 2, 2003, ISW filed suit in Grimes County, Texas, alleging claims against Lycoming for business disparage-

---

1. ISW's general partner is Texas Steel Corporation, and its limited partner is ISW Texas Corporation. Neither of these entities is a party in either the Texas or the Pennsylvania lawsuits; however, Texas Steel Corporation is apparently a subsidiary of Citation Corporation, which is a party to the Pennsylvania lawsuits.

ment and breach of contract and seeking declaratory relief regarding the rights and obligations of the parties under the MSA. Specifically, ISW claimed that Lycoming's public statements regarding the cause of the crankshaft failures injured ISW's reputation and that Lycoming breached the MSA by failing to pay for certain crankshafts. ISW further requested declaratory judgment that ISW was entitled to indemnity from Lycoming and that ISW was not obligated to indemnify Lycoming.

On May 22, 2003, Lycoming initiated suit in Pennsylvania against IFI, Citation Wisconsin, and Citation Corporation.[2] Ultimately, Lycoming brought two actions against these entities: an action at law seeking over $75 million in damages allegedly incurred as a result of the recall, and an action in equity requesting injunctive relief to force IFI to continue producing crankshafts under the MSA. In the damages action, Lycoming also alleged that Citation breached the MSA by causing its subsidiary, ISW, to file the Texas action in violation of a mediation clause.[3] Lycoming initially requested that the Pennsylvania court direct Citation to have ISW dismiss the Texas action pending mediation, but this request was subsequently withdrawn.

On May 23, 2003, a day after filing the Pennsylvania praecipe, Lycoming answered in the Texas litigation, asserting that ISW lacked standing to bring suit under the MSA because IFI, not ISW, was the signatory. On June 24, ISW filed an amended petition in the Texas lawsuit, claiming that IFI had assigned all of its rights and obligations under the MSA to ISW and that ISW was attorney-in-fact for IFI on all matters pertaining to the MSA. The amended petition further requested a declaratory judgment that the assignment was valid.

On June 12, 2003, the parties to the Pennsylvania litigation entered into, and the judge signed, an Agreed Order for Preliminary Injunction, requiring IFI, Citation Wisconsin, and Citation Corporation to continue to produce all crankshaft forgings ordered by Lycoming. When forgings were not timely produced, Lycoming filed a motion for contempt in the Pennsylvania court on August 13, 2003.[4]

On September 5, 2003, the Texas district judge signed a temporary restraining order requiring Lycoming to immediately cease prosecution of the Pennsylvania lawsuits. Lycoming then wrote two letters to the Pennsylvania court, essentially informing the court of the Texas TRO and stating that Lycoming did not intend to violate the TRO; the letter suggested that the Texas TRO did not restrain the Pennsylvania court from enforcing its own orders *sua sponte*. The Pennsylvania court then ordered the contempt proceeding to go forward as scheduled. All parties to the Pennsylvania lawsuits appeared at the hearing and announced ready, and no party objected to the proceedings based on the Texas TRO. Before any evidence was received, however, the parties agreed to a production schedule, and an agreement to that effect was memorialized on the record.

On September 25, 2003, after an evidentiary hearing, the Texas trial court entered a temporary injunction expressly prohibit-

---

2. Suit was commenced by the filing of a Praecipe for Writ of Summons under Pennsylvania procedure, which allows a complaint to be filed later. *See* PA. R.C.P. 1007.

3. Neither Citation Corporation nor ISW were signatories to the MSA.

4. ISW maintains that any failure to meet scheduled production was the result of equipment malfunctions and was not limited to forgings for Lycoming.

ing Lycoming from prosecuting the Pennsylvania lawsuits and requiring it to file any pleadings necessary to obtain a stay, abatement, or dismissal of the Pennsylvania lawsuits pending final judgment of the Texas court. In its order, the court specifically found, *inter alia:* (1) that IFI had assigned to ISW all of its rights and obligations under the MSA; (2) that Lycoming knew or should have known of the assignment no later than October 14, 2002, and either consented to the terms, waived the right to complain, or was otherwise estopped from asserting lack of consent as a defense to the assignment; (3) that Lycoming subsequently filed the Pennsylvania lawsuits with full knowledge of the assignment; (4) that the legal and factual issues in the Pennsylvania lawsuits were substantially similar to those raised in the Texas lawsuit; (5) that Lycoming sought to stay the Texas lawsuit by its actions in the Pennsylvania lawsuits; (6) that Lycoming prosecuted a motion for contempt in Pennsylvania despite issuance of the Texas TRO; (7) that unless the prosecution of the Pennsylvania lawsuits was immediately enjoined, ISW's rights would be adjudicated by a foreign court in multiple lawsuits in which it was not a party; and (8) that prosecution of the Pennsylvania lawsuits threatened the jurisdiction of the Texas court, violated important public policies of Texas, and was vexatious and harassing to ISW.

### Anti-suit Injunctions

▇▇▇ In reviewing the issuance of a temporary anti-suit injunction, we utilize an abuse of discretion standard. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161,

163 (Tex.1986). Although courts of this state have the power to enjoin parties from filing or pursuing lawsuits in other states, the principle of comity requires that courts exercise this equitable power sparingly and only in very special circumstances. *See Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex.1996); *Christensen*, 719 S.W.2d at 163.[5] There are no precise guidelines for judging the propriety of an anti-suit injunction; the circumstances of each situation must be carefully examined to determine whether the injunction is necessary to prevent an irreparable miscarriage of justice. *Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex.1986). Generally, anti-suit injunctions are appropriate in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; and (4) to protect a party from vexatious or harassing litigation. *Golden Rule*, 925 S.W.2d at 651. A party seeking such an injunction must establish that "a clear equity demands" the injunction. *Id.* A single parallel proceeding in a foreign forum does not constitute a multiplicity of suits and cannot, by itself, justify the issuance of an anti-suit injunction. *Id.* at 651–52; *Gannon*, 706 S.W.2d at 307.

### "Very Special Circumstances"

As stated, before an anti-suit injunction can properly issue, the requesting party must demonstrate that "very special circumstances" exist such that an injunction is necessary to prevent an "irreparable miscarriage of justice." *See Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 307.[6] ISW's primary claim to very special

---

**5.** "Comity" has been defined as "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another." *Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex.1986) (quot-

ing *New Process Steel Corp. v. Steel Corp. of Tex.*, 638 S.W.2d 522, 524 (Tex.App.-Houston [1st Dist.] 1982, no writ)).

**6.** *See also Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 343 (Tex.

circumstances does not fall neatly into the four *Golden Rule* categories. 925 S.W.2d at 651. ISW contends that the gravamen of its request for an injunction lies in the fact that its interests are being tried *in absentia* in the Pennsylvania lawsuits. Specifically, ISW asserts that because it is the only entity, between itself and the Pennsylvania defendants, capable of making Lycoming's rough forgings, any rulings made by the Pennsylvania court regarding production of the forgings necessarily affect ISW's interests.

ISW's argument is self-defeating. It is a basic tenet of American jurisprudence that before a court can affect a person's interest in *in personam* litigation, that person must either be a party to litigation before the court or in privity to a party in litigation before the court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *Hansberry v. Lee*, 311 U.S. 32, 40–41, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1277–78 (9th Cir.1992); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652–53 (Tex.1996). Therefore, in order for ISW to be held to orders or judgments issued in the Pennsylvania lawsuits, either it must be a party to the Pennsylvania lawsuits (which it claims it is not) or it must be in privity to a party in the Pennsylvania lawsuits (which it does not specifically address). Further, even if in privity with a party, ISW still could not be held to the court's judgment or order unless the requirements of claim or issue preclusion were met.[7] Hence, either (1) the Pennsylvania lawsuit cannot affect ISW's interests, or (2) ISW's interests are represented in the Pennsylvania lawsuits by a party in privity with it. *See Amstadt*, 919 S.W.2d at 653.[8] Thus, ISW's argument that an

App.-Dallas 2001, pet. dism'd w.o.j.) (finding very special circumstances existed where insurer violated policy clause by filing suit in California).

7. Issue preclusion, or collateral estoppel, precludes relitigation of particular issues already resolved in a prior litigation, and it requires that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action, (2) those facts were essential to the judgment in the first action, and (3) the party against whom the doctrine is asserted was a party, or in privity to a party, in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801–02 (Tex.1994). Claim preclusion, or res judicata, precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt*, 919 S.W.2d at 652. It requires proof of: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties or those in privity with them, and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Id.*

8. There is some suggestion in the briefing and the record that ISW might be in privity with IFI because IFI assigned all of its rights and obligations under the MSA to ISW and that under the assignment agreement ISW became attorney-in-fact for IFI regarding all matters pertaining to the MSA. There is also a suggestion that Citation Corporation is an "indirect corporate parent" of ISW, although there is no explanation of this relationship or how it could give Citation control over ISW's production of forgings, through piercing of the corporate veil or otherwise. We need not decide any of the privity or corporations questions presented by these circumstances because, as explained above, if ISW is in privity with any of the Pennsylvania defendants then its interests are represented in the Pennsylvania lawsuits, but if it is not in privity with any of the Pennsylvania defendants then its interests are not being tried in the Pennsylvania lawsuits. If IFI and Citation Corporation wish to contend that they are not proper parties but ISW is a proper party, they can do so in the Pennsylvania lawsuits. That issue is beyond the scope of the Texas lawsuit before us. Whether or not the elements of claim or issue preclusion can be met under these facts is likewise beyond the scope of this appeal. *See infra* note 9.

anti-suit injunction can properly issue because its interests are being tried in Pennsylvania *in absentia* is without merit.[9]

In addition to this primary argument, ISW also raises arguments related to the four categories identified by the Texas Supreme Court as appropriate situations for issuance of an anti-suit injunction, *i.e.*, (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation. *Golden Rule*, 925 S.W.2d at 651. We will discuss each in turn.

### Threat to Jurisdiction

■■■ Without explaining its reasoning, the trial court specifically found that the prosecution of the Pennsylvania cases by Lycoming was a threat to its jurisdiction. ISW argues primarily that Lycoming's motion requesting that the Pennsylvania court compel Citation Corporation to cause ISW to dismiss the Texas lawsuit constituted a direct threat to the Texas court's jurisdiction. This request, however, was withdrawn in the Pennsylvania court before the Texas court issued its anti-suit injunction. *See Gannon*, 706 S.W.2d at 307 (noting trial court could have delayed issuing its injunction to give party time to comply with stipulation that it would drop injunction request in foreign suit). Nevertheless, ISW insists that because Lycoming could have renewed this request at any time, there was still a lingering threat to

the court's jurisdiction. But if such a potential threat was enough to support an anti-suit injunction, then such injunctions would be attainable in every case where two parties have filed against each other in different jurisdictions, because one of the parties could always request that one of the courts order the other party to dismiss its lawsuit.[10] Furthermore, at the time the Texas court issued the injunction, not only had Lycoming withdrawn the request in Pennsylvania, its counsel had also stated on the Texas record that it would not renew the request. *See id.* Accordingly, there was no continuing threat to the court's jurisdiction warranting an anti-suit injunction.

■■■ ISW additionally asserts that Lycoming threatened the court's jurisdiction when it proceeded with the contempt hearing in Pennsylvania in violation of the Texas court's TRO. Whether or not Lycoming violated the Texas TRO might be relevant in a contempt proceeding for violation of the TRO, but it is not particularly germane to issuance of the anti-suit injunction. Although a Texas court may use an anti-suit injunction to enjoin a party from pursuing litigation in a sister state, our courts have no authority to control the actions of foreign courts. *See Gannon*, 706 S.W.2d at 306–07; *see generally Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) ("[A]ntisuit injunctions regarding litigation elsewhere, even if compatible with due

---

9. Furthermore, the possibility of inconsistent judgments in the Texas and Pennsylvania lawsuits does not in and of itself warrant an anti-suit injunction by either court. *See Gannon*, 706 S.W.2d at 307. Once a final judgment is reached in one of the actions, principles of full faith and credit, comity, issue preclusion, and claim preclusion dictate that the second forum is obligated to respect the prior adjudication, so that even if both proceedings con-

tinue there should be only one judgment recognized in both forums. *Cf. id.*

10. Indeed, under ISW's argument, its request for an anti-suit injunction against Lycoming in Texas would have been sufficient grounds for the Pennsylvania court to grant such an injunction in the Pennsylvania litigation. This would turn pursuit of an anti-suit injunction into a completely circular and potentially self-defeating endeavor.

process as a direction constraining parties to the decree, in fact have not controlled the second court's actions regarding litigation in that court."). The Pennsylvania court ordered Lycoming and the other parties to appear at a contempt hearing regarding an alleged violation of one of its orders.[11] Lycoming was then in a Catch–22, requiring it to either violate the Texas TRO or the Pennsylvania order to appear. ISW suggests that Lycoming should have then objected to the Pennsylvania contempt proceedings, but it is clear from the record that the Pennsylvania trial court knew about the Texas TRO and knew that Lycoming believed that the TRO affected the contempt proceedings. Further objection was unnecessary.

Moreover, the issue of objection is moot because the Pennsylvania contempt proceedings never reached the merits of the dispute; the parties yet again agreed to a production schedule. Nothing in the Texas TRO expressly prevented Lycoming from agreeing to a production schedule with IFI. It must also be noted that the contempt proceeding itself was based on the alleged failure of the Pennsylvania defendants to perform in accordance with an earlier agreed order regarding production of forgings. Because the production of forgings by those parties under that order is not at issue in the Texas lawsuit, the Pennsylvania contempt proceeding was not a threat to the Texas court's jurisdiction.[12] Accordingly, we find that there was no ongoing threat to the trial court's jurisdiction sufficient to support an anti-suit injunction.

### Evasion of Public Policy

 Without specifying particular policies, the trial court found that Lycoming's prosecution of the Pennsylvania lawsuits violated important public policies of Texas. ISW argues that Lycoming violated (1) its right to access the courts, (2) the policy that favors the plaintiff's choice of forum, and (3) the policy that requires a request for injunctive relief to be filed in the county of the opposing party's domicile.

Regarding the first contention, ISW's right to access the courts is not impinged by prosecution of the Pennsylvania lawsuits, as evidenced by the fact that ISW has filed suit in a Texas court and is not being prevented from prosecuting that action. *See Golden Rule*, 925 S.W.2d at 651 (holding prosecution of parallel or mirror image suit was not by itself sufficient to justify anti-suit injunction).[13]

11. The underlying order at issue in the Pennsylvania contempt proceeding, the motion for contempt, and the originally scheduled hearing date for the contempt proceeding all pre-date issuance of the Texas TRO. The Texas TRO was obtained after the Pennsylvania court *sua sponte* rescheduled the hearing but before the hearing actually took place.

12. ISW asserts that the original agreed order included a provision stating that the Pennsylvania defendants had to produce forgings only to the extent they were required to do so under the MSA. ISW then argues only it and not the Pennsylvania defendants were still required under the MSA to produce forgings. If these two assertions are true, they could perhaps be used as a defense against contempt proceedings in Pennsylvania, but they are not grounds for issuance of a Texas anti-suit injunction. We further note that ISW's interpretation of the agreed order is questionable. The order actually states: "[IFI, Citation Wisconsin, and Citation Corporation] shall produce and provide all crankshaft forgings ordered by [Lycoming] pursuant to the [MSA]. Nothing in this Order shall be construed to expand, limit or amend the provisions of the [MSA]."

13. The open courts provision of the Texas Constitution is traditionally interpreted as creating three guarantees: (1) courts must actually be open and operating, (2) citizens must have access to those courts unimpeded by unreasonable financial barriers, and (3) meaningful legal remedies must be afforded

Regarding choice of forum, Texas courts generally favor the plaintiff's choice when deciding intrastate venue questions. *See Wilson v. Texas Parks and Wildlife Dept.*, 886 S.W.2d 259, 260–61 (Tex.1994). However, the mere fact that a plaintiff chose a Texas forum and the defendant subsequently filed a mirror image suit in a sister state does not by itself support issuance of an anti-suit injunction; both suits may continue unabated. *See Golden Rule*, 925 S.W.2d at 651–52. Additionally, in the present case, many of ISW's claims are *defensive* in nature, seeking declaratory judgment that would defeat Lycoming's affirmative claims. The nature of ISW's claims weighs against a general policy favoring a Texas venue.[14]

Regarding ISW's third argument, when pleadings in a Texas lawsuit show that issuance of a permanent injunction is the principal relief sought, venue is mandatory in the county of the defendant's domicile. *See In re City of Dallas*, 977 S.W.2d 798, 803 (Tex.App.-Fort Worth 1998) (orig. proceeding). However, Lycoming's Pennsylvania equity action does not name ISW as a party. ISW provides no authority that would require mandatory venue in the domicile county of an entity not a party to the lawsuit. If the Pennsylvania defendants wish to assert that the equity action against them is improper because ISW is in some way the real party in interest, they are free to make that claim in the Pennsylvania court. *See generally Lone Starr Multi Theatres, Inc. v. State,*

922 S.W.2d 295, 297–98 (Tex.App.-Austin 1996, no writ) (stating that under Texas law all parties against whom an injunction must run should be named in a suit for injunctive relief). A Texas court is without authority to tell a Pennsylvania court whether the Pennsylvania court is the proper venue for a lawsuit. *See Baker,* 522 U.S. at 236, 118 S.Ct. 657; *Gannon,* 706 S.W.2d at 306–07. Accordingly, we find that the continued prosecution of the Pennsylvania lawsuits does not violate those policies of the state of Texas identified by ISW.

### Multiplicity of Suits

Although in its order the trial court mentions that there are multiple foreign lawsuits, it stops short of suggesting the anti-suit injunction was justified on that basis. Likewise, ISW does not make this argument on appeal. Typically, the multiplicity argument supports issuance of an anti-suit injunction when a party files numerous lawsuits to relitigate issues in different courts. *See, e.g., Tri–State Pipe & Equip., Inc. v. S. County Mutual Ins. Co.,* 8 S.W.3d 394, 401 (Tex. App.-Texarkana 1999, no pet.); *In re Estate of Dilasky,* 972 S.W.2d 763, 767 (Tex. App.-Corpus Christi 1998, no writ). Here, Lycoming filed two lawsuits in Pennsylvania, one in equity and one in law. These separate actions do not qualify as "multiple suits" under *Golden Rule.* Pennsylvania continues to recognize certain distinctions between legal and equitable actions that Texas no longer recognizes. *See* 2

---

to our citizens, so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress. TEX. CONST. art. I, § 13; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 448 (Tex.1993).

**14.** The discussion of this issue assumes without deciding that ISW is ultimately correct

that the claims against the Pennsylvania defendants are similar to claims Lycoming would bring against ISW. If the claims are not the same, then an anti-suit injunction would clearly be improper. *See Christensen,* 719 S.W.2d at 163 (reversing anti-suit injunction because California lawsuit raised issues and involved parties different from those in the Texas lawsuit).

STANDARD PA. PRAC. §§ 6:11, 7.13 (discussing distinctions between legal and equitable actions and remedies under Pennsylvania procedure). Under Texas procedure, the two lawsuits would have been combined in one action. *See* TEX.R. CIV. P. 51 ("The plaintiff in his petition . . . may join as independent or as alternate claims as many claims either legal or equitable or both as he may have against an opposing party."). The Pennsylvania lawsuits therefore essentially constitute just one action. Under these circumstances, we decline to hold that a multiplicity of suits supports issuance of the anti-suit injunction. *See Golden Rule*, 925 S.W.2d at 651; *Gannon*, 706 S.W.2d at 307–08.

### Vexatious or Harassing Litigation

The trial court further found that prosecution of the Pennsylvania lawsuits is vexatious and harassing to ISW. ISW contends that these lawsuits were vexatious and harassing because Lycoming sought to force dismissal of ISW's Texas lawsuit and to determine ISW's rights *in absentia.* These arguments are mere reiterations of arguments previously disposed of regarding the alleged threat to the trial court's jurisdiction and the power of the Pennsylvania court to affect ISW's interests *in absentia.* As explained above, the request to have the Texas case dismissed had been withdrawn by the time the hearing on the anti-suit injunction commenced, and Lycoming stated on the record that it would not renew the request. Thus, the abandoned request cannot support issuance of the anti-suit injunction. *See Gannon*, 706 S.W.2d at 307. Also, as explained above, either ISW's rights cannot be affected by

the Pennsylvania proceedings or its rights are adequately represented by a party to the proceedings that is in privity with it. *See Chem. Bank*, 955 F.2d at 1277–78. Thus, ISW's *in absentia* claim does not support issuance of the anti-suit injunction.

ISW further argues that Lycoming's decision to sue entities "with no involvement in the forging process" also supports the vexatious and harassing finding. However, the only entities that could be vexed or harassed by Lycoming's lawsuits are the parties to those lawsuits—IFI, Wisconsin Citation, and Citation Corporation. ISW cannot be vexed and harassed because it is not a party.[15]

Lastly, ISW contends that Lycoming's prosecution of contempt charges against the Pennsylvania defendants supports a finding of vexatious and harassing litigation. It was the Pennsylvania defendants themselves who agreed to produce forgings. ISW fails to explain how an attempt to compel the Pennsylvania defendants to do what they (and not ISW) agreed to do is vexing and harassing toward ISW. Furthermore, a Texas court has no power to prevent a Pennsylvania court from enforcing its own orders. *See Baker*, 522 U.S. at 236, 118 S.Ct. 657; *Gannon*, 706 S.W.2d at 306–07. This record does not support the finding that Lycoming filed the Pennsylvania lawsuits with the intent to vex or harass ISW.

### Conclusion

Because the record does not support the conclusion that (1) the circumstances of this case fit within the four *Golden Rule* categories or (2) very special circum-

---

15. A persistent theme of ISW's arguments, as specifically expressed in oral argument, is that the anti-suit injunction is justified by "real life reality." Unless "real life reality" comports with Texas law and common logic, it cannot support the injunction. We are not privy to the parties litigation and business strategies, nor is it our place to inquire. We just apply the law.

stances exist to justify issuance of an anti-suit injunction, we hold that the trial court abused its discretion in issuing the injunction.

Accordingly, the trial court's order granting the anti-suit injunction is reversed and the injunction is dissolved.