

## NUMBER 13-10-00200-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

COUNSEL FINANCIAL SERVICES, L.L.C.,                    Appellant,

v.

DAVID McQUADE LEIBOWITZ
AND DAVID McQUADE LEIBOWITZ, P.C.,                    Appellees.

### On appeal from the 370th District Court
### of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides[1]

---

[1] The Honorable Linda Reyna Yañez, former Justice of this Court, heard this case at oral argument but did not participate in this opinion because her term of office expired on December 31, 2010.  *See* TEX. R. APP. P. 41.1(a).  She was replaced on panel by Chief Justice Rogelio Valdez.

## Memorandum Opinion by Justice Benavides

Through this appeal, Counsel Financial Services, L.L.C. ("Counsel Financial") seeks to set aside an order granting a temporary injunction which prevents it from, *inter alia*, instituting legal proceedings to enforce a security agreement and collecting on a judgment in its favor.   We reverse and remand.[2]

### I. BACKGROUND

Counsel Financial loaned the law firm of David McQuade Leibowitz, P.C. more than five million dollars.   The loan was secured by David McQuade Leibowitz, P.C. and David McQuade Leibowitz individually (collectively "Leibowitz").   The promissory note evidencing the loan was secured by a security agreement and a guaranty executed by Leibowitz in his individual capacity.   The note and security agreement were modified several times by the agreement of the parties over the course of several years.   These documents provided Counsel Financial with a security interest in Leibowitz's legal fees,[3] accounts, and intangibles in the event of a default under the loan.

---

[2] By separate appeal arising from the same trial court proceedings, Counsel Financial sought to challenge an order of the trial court denying Counsel Financial's motion to transfer venue.   By opinion issued this same date, the Court dismissed that appeal for want of jurisdiction.   *See Counsel Fin. Servs., L.L.C. v. Leibowitz*, No. 13-10-00693-CV, 2011 Tex. App. LEXIS, *__ (Tex. App.—Corpus Christi June 30, 2011, no pet. h.) (mem. op.).   This Court also previously denied an original proceeding arising from this same lawsuit.   *See In re Counsel Fin. Servs., L.L.C.*, No. 13–10–00157–CV, 2010 Tex. App. LEXIS 3112, at **1–3 (Tex. App.—Corpus Christi Apr. 27, 2010, orig. proceeding) (per curiam mem. op.) (denying petition for writ of mandamus pertaining to venue on grounds of ripeness).

[3] Neither party has briefed the issue regarding whether such an agreement violates rule 5.04 of the Texas Disciplinary Rules of Professional Conduct, and accordingly, this opinion does not address that issue.   *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 5.04(a), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West Supp. 2010) (providing generally that "[a] lawyer or law firm shall not share or promise to share legal fees with a non-lawyer").

Leibowitz failed to make payments due under the loan, and Counsel Financial brought suit against Leibowitz in cause number 12008–010002 in the Supreme Court of the State of New York, in and for the County of Erie, styled *Counsel Financial Services, LLC, v. David McQuade Leibowitz, P.C. et al.*, for non-payment of the note and the guaranty. Following several trial court hearings, Counsel Financial obtained a summary judgment against Leibowitz in the amount of $5,506,180.96.[4] In the New York court system, Leibowitz unsuccessfully appealed the judgment.

On December 2, 2008, Counsel Financial filed an authenticated copy of the New York judgment in state district court in Bexar County, Texas. On December 29, 2008, Leibowitz filed a motion for relief from enforcement of foreign judgment, arguing that the trial court should apply the *Craddock* standard for motions for new trial with regard to the domestication of foreign judgments. *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (1939) (holding that a default judgment should be set aside and a new trial granted if: (1) the failure to answer or appear at trial was not intentional or the result of conscious indifference but was due to a mistake or accident; (2) the defendant sets up a meritorious defense; and (3) the motion is filed at such time that granting a new trial would not result in delay or otherwise injure the plaintiff). On January 30, 2009, the trial court granted Leibowitz's motion and refused to enforce the New York judgment.

---

[4] The specific proceedings underlying the rendition of judgment in that case are detailed by the San Antonio Court of Appeals in *Counsel Financial Services, L.L.C., v. Leibowitz, P.C.*, 31 S.W.3d 45 (Tex. App.—San Antonio 2010, pet. denied).

Counsel Financial appealed that determination. The San Antonio Court of Appeals held that the *Craddock* motion for new trial standard relating to default judgments does not apply to proceedings under the Uniform Enforcement of Foreign Judgments Act. *Counsel Financial Services, L.L.C., v. Leibowitz*, P.C., 31 S.W.3d 45, 47 (Tex. App.—San Antonio 2010, pet. denied). The court reversed and rendered judgment that the New York judgment is entitled to full faith and credit and is fully enforceable in Texas. *Id.* at 57. The Texas Supreme Court denied the petition for review of this cause on August 20, 2010 and further denied rehearing on October 15, 2010.

In separate proceedings which underlie this appeal, Leibowitz represented Maria Alma Anzaldua in a personal injury lawsuit against Kmart Corporation ("Kmart") in the 370th District Court of Hidalgo County. Upon learning that Anzaldua and Kmart had reached a settlement, Counsel Financial filed a plea in intervention on the grounds that Leibowitz had refused to pay the New York debt and judgment. Counsel Financial sought "an order from the Court directing all Parties to pay directly to [Counsel Financial] all funds (up to the amount of CFS's lien) to which Leibowitz and the Law Firm may be entitled to as a result of this case and the settlement." In its intervention, Counsel Financial expressly stated that it "does not seek to disturb the proposed settlement agreement in the Lawsuit" and, likewise, "does not seek to disturb the rights of Plaintiff to receive the portion of the settlement that is rightfully hers, or the release of Defendant from the Lawsuit."

4

On October 9, 2009, Leibowitz also intervened in the Hidalgo County suit and asserted claims for affirmative relief against Counsel Financial, including claims for declaratory and temporary injunctive relief and damage claims for tortious interference and business disparagement. By his first amended pleading, Leibowitz sought an anti-suit injunction and an anti-execution injunction attempting to restrain Counsel Financial from enforcing the domesticated judgment or the security agreement. According to Leibowitz's pleadings, Counsel Financial claimed that it was entitled to Leibowitz's portion of the settlement funds based either on "a foreign default judgment which is not now enforceable under Texas law, or a Security Agreement which [Counsel Financial] has itself breached."

On March 19, 2010, the trial court signed an order granting interpleader of the settlement funds, releasing Kmart from "any and all liability" to Anzaldua, Leibowitz, and Counsel Financial, and severing all claims against Kmart into a separate cause. The order recites that "[a]ll claims or causes of action asserted by any party against Kmart Corporation" in the original cause number or the severed cause which were not expressly granted in the order were denied, and the order resolved "all claims" against Kmart. That same day, by separate order, the trial court granted Anzaldua's unopposed motion to release her share of the funds held in the registry of the court "as her share of the settlement funds."

On March 22, 2010, the trial court issued an order granting Leibowitz his requested relief. The temporary injunction states in relevant part:

5

1.     COUNSEL FINANCIAL SERVICES, L.L.C. ("CFS") has submitted itself to the jurisdiction of this Court, and waived any objection to venue of this matter, by requesting affirmative relief against Leibowitz in this court in Counsel Financial Services, LLC's Plea in Intervention wherein it seeks not only to enforce the Security Agreement (the "Security Agreement"), but also invokes the jurisdiction of this Court to take possession of property which is alleged to belong to CFS pursuant to the terms of a judgment taken November 25, 2008 by default in the case styled *Counsel Financial Services, LLC, v. David McQuade Leibowitz, P.C. et al.*, Cause No. 2008–10002, in the Supreme Court of the State of New York, New York in and for the County of Erie, ("the Default Judgment").

. . . .

3.     Leibowitz has shown a strong and substantial likelihood that he will prevail on the merits of his Declaratory Judgment Action and his action for damages.   In particular, Leibowitz has shown that there is a strong and substantial likelihood that upon trial on the merits it will be established that:

    a. CFS has no right under the terms of the Security Agreement to contact any Defendant, Attorney for Defendant, and/or client, or any representative of any of those parties, in any case handled by Leibowitz, because such persons are ". . . not obligated with respect to any collateral . . ." owned by CFS.  CFS has no right to any contingency fees until they have matured, by judgment or otherwise.

    b. The negative covenants set out in paragraph 4(b) of the Security Agreement constitute an unconscionable interference with the attorney–client relationship in abrogation of the duty of utmost fidelity owed by Leibowitz to his clients, and are unenforceable under Texas Law as against public policy;

    c. The right given to CFs under paragraph 6(c) of the Security Agreement, to contact Defendants and their attorneys in Leibowitz's cases and direct them to pay funds to CFS requires a violation of the Texas Disciplinary Rules of Professional Conduct in that Leibowitz's clients have never consented to the

6

release of confidential information relating to the amount and timing of their settlements;

    d. Leibowitz has the right to offset any amounts that he may owe to CFS against the amounts that CFS and its agents owe him as a result of their wrongful conduct as shown by the evidence presented;

    e. CFS has no right to assert claims under the Default Judgment until such time as the Judgment has been finally domesticated in the State of Texas and all appeals relating thereto are exhausted; and;

    f. CFS has breached and defaulted under the terms of the Security Agreement. Being in default under the Security Agreement, CFS has excused any further performance thereof by Leibowitz, and Leibowitz has shown a probable right to collect damages proximately cause[d] by such breach.

. . . .

In order to protect the jurisdiction of this Court, prevent CFs from rendering the declaratory relief sought by Leibowitz ineffectual, and to preserve the status quo until a trial on the merits can be had, IT IS ORDERED, ADJUDGED[,] AND DECREED as follows:

1. CFS, and its employees, agents, attorneys, and those acting in concert with such people who have actual knowledge of the terms of the Order are hereby immediately ENJOINED and RESTRAINED from:

a. Enforcing or attempting to enforce the terms of the Security Agreement, including but not limited to, communicating to any third parties that Leibowitz is in default of the Security Agreement and/or instructing third persons/parties to pay any monies over to CFS;

b. Instituting and/or maintaining, or seeking affirmative relief in an action in any other Texas State Court other than the 370th Judicial Court of Hidalgo County, Texas to enforce the terms of the Security Agreement, the Default Judgment[,]

7

and/or claiming an interest in the proceeds of settlement of any of Leibowitz's cases;

c.     Pursuing any claim for recovery under the Security Agreement in any Court other than the 370th Judicial Court of Hidalgo County, Texas; and,

d.     Attempting to levy, execute, or otherwise attempt to collect on the Judgment issued in cause No. 2008–10002, in the Supreme Court of State of New York, New York in and for the County of Erie, styled *Counsel Financial Services, LLC, v. David McQuade Leibowitz, P.C. et al.* on November 25, 2008, unless and until:

> i.     the Default Judgment has been formally domesticated by an order of a Texas Court of competent jurisdiction, and all appeals relating thereto have been fully and finally exhausted, and/or not otherwise superceded pursuant to the Texas Uniform Enforcement of Foreign Judgments Act, by this Court or otherwise; and/or,

> ii.     all just and lawful recoupments and offsets which Leibowitz has to the amounts alleged to be owed under the Default Judgment have been finally determined by this Court.

Counsel Financial raises six issues on appeal:  (1) the trial court abused its discretion by enjoining enforcement of or execution on the judgment domesticated in Bexar County because Leibowitz failed to establish a probable right to recover or probable, imminent, irreparable harm; (2) the trial court exceeded its jurisdiction by granting the anti-execution temporary injunction; (3) the trial court abused its discretion by granting the anti-suit temporary injunction because it does not come within any of the four bases recognized by the Texas Supreme Court for anti-suit injunctions; (4) the trial

8

court exceeded its jurisdiction by granting the anti-suit temporary injunction; (5) the trial court abused its discretion by enjoining enforcement of Counsel Financial's rights under the security agreement because Leibowitz failed to establish a probable right to recover or probable, imminent, irreparable harm; and (6) the temporary injunction is void because it fails to specifically state why irreparable injury will occur if the temporary injunction is not granted. For purposes of clarity, we will address these issues out of order.

## II. STANDARD OF REVIEW FOR TEMPORARY INJUNCTION

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Appellate review is strictly limited to evaluating whether there has been a clear abuse of discretion. *See id.* The scope of review is limited to the validity of the temporary injunction order. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). We do not review the merits of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 861 (Tex. 1978). Instead, we determine whether there has been an abuse of discretion by the trial court in granting or denying the requested relief. *Id.* at 862. In making this determination, we may not substitute our judgment for that of the trial court unless its decision was so arbitrary that it exceeded the bounds of reasonableness. *See Butnaru*, 84 S.W.3d at 204. We review the evidence in the light most favorable to the order and indulge all reasonable inferences in favor of the decision. *See Davis*, 571 S.W.2d at 862; *City of McAllen v. McAllen Police Officers Union*, 221 S.W.3d 885, 893 (Tex. App.—Corpus Christi 2007,

9

pet. denied).    A trial court does not abuse its discretion if it bases its decision on conflicting evidence where evidence in the record reasonably supports the trial court's decision.    *Davis*, 571 S.W.2d at 862.

The purpose of a temporary injunction is to preserve the status quo until a trial on the merits.    *Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).    The sole issue presented to a trial court at a temporary injunction hearing is whether the applicant is entitled to preserve the status quo pending trial on the merits.   *Butnaru*, 84 S.W.3d at 204; *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).    The status quo is defined as the last, actual, peaceable, non-contested status that preceded the pending controversy.    *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.).

A temporary injunction is an extraordinary remedy that does not issue unless the applicant pleads and proves three elements:    (1) a cause of action, (2) a probable right to the relief sought, and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied).    A probable right of success on the merits is shown by alleging a cause of action and introducing evidence that tends to sustain it. *Jennifer Yarto & DTRJ Invs., L.P. v. Gilliland*, 287 S.W.3d 83, 94 (Tex. App.—Corpus Christi 2009, no pet.).

10

### III. UNIFORM ENFORCEMENT OF FOREIGN JUDGMENTS ACT

The United States Constitution requires each state to give full faith and credit to the public acts, records, and judicial proceedings of every other state. *See* U.S. CONST. art. IV, § 1. Texas law provides two methods for enforcing a foreign judgment. *Charles Brown, L.L.P. v. Lanier Worldwide, Inc.*, 124 S.W.3d 883, 902 (Tex. App.—Houston [14th Dist.] 2004, no pet.). A judgment creditor may either bring a common law action to enforce a judgment, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 35.008 (West 2008), or the creditor may enforce a foreign judgment under the Uniform Enforcement of Foreign Judgments Act ("UEFJA"), as provided in chapter 35 of the Texas Civil Practice and Remedies Code. *See id.* §§ 35.001–.008 (West 2008). The UEFJA provides a means by which an authenticated copy of a foreign judgment may be filed in a court of competent jurisdiction in Texas and become enforceable as a Texas judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(c) (West 2008); *see Walnut Equip. Leasing Co. Inc. v. Wu*, 920 S.W.2d 285, 286 (Tex. 1996).

When a judgment creditor chooses to proceed under the UEFJA, the filing of a foreign judgment is in the "nature of both a plaintiff's original petition and a final judgment: the filing initiates the enforcement proceeding, but it also instantly creates a Texas judgment that is enforceable." *Moncrief v. Harvey*, 805 S.W.2d 20, 22 (Tex. App.—Dallas 1991, writ denied); *see Wu*, 920 S.W.2d at 286; *Counsel Fin. Servs., L.L.C.*, 311 S.W.3d at 50. A foreign judgment filed under the UEFJA is treated in the same manner as a judgment of the court in which the foreign judgment is filed. TEX.

11

CIV. PRAC. & REM. CODE ANN. § 35.003(b) (West 2008).

When a judgment creditor files an authenticated copy of a foreign judgment under the UEFJA, he satisfies his burden to present a prima facie case for enforcement of the judgment; the burden then shifts to the judgment debtor to prove the foreign judgment should not be given full faith and credit. *Jonsson v. Rand Racing, L.L.C.*, 270 S.W.3d 320, 323–24 (Tex. App.—Dallas 2008, no pet.); *H. Heller & Co. v. La–Pac. Corp.*, 209 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist] 2006, pet. denied). There are five well established exceptions to the requirements of full faith and credit: (1) the foreign judgment is interlocutory; (2) the foreign judgment is subject to modification under the law of the rendering state; (3) the rendering state court lacked jurisdiction; (4) the foreign judgment was procured by extrinsic fraud; and (5) the period to file a foreign judgment under the UEFJA had expired. *Mindis Metals, Inc. v. Oilfield Motor & Control, Inc.,* 132 S.W.3d 477, 484 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). A motion contesting enforcement of a foreign judgment operates as a motion for new trial. *Jonsson*, 270 S.W.3d at 324. A trial court has broad discretion in this regard. *Id.* The presumption of validity can only be overcome by clear and convincing evidence to the contrary. *Mindis Metals, Inc.,* 132 S.W.3d at 484; *Cash Register Sales & Servs. of Houston, Inc. v. Copelco Capital, Inc.*, 62 S.W.3d 278, 281 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

Pursuant to section 35.003(c) of the UEFJA, such a foreign judgment has "the same effect and is subject to the same procedures, defenses, and proceedings for

12

reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in which it is filed." TEX. CIV. PRAC. & REM. CODE ANN. § 35.003(c); *Counsel Fin. Servs., L.L.C.*, 311 S.W.3d at 50. The UEFJA provision that a filed foreign judgment is subject to the same procedures, defenses, and proceedings for vacating a Texas judgment has been interpreted as referring to "the procedural devices available to vacate a Texas judgment." *Mindis Metals, Inc.*, 132 S.W.3d at 484. "It cannot mean that the judgment can be vacated for any reason sufficient to support a traditional motion for new trial." *Id.*

Further, in a collateral attack on a sister state's judgment, no defense may be set up that goes to the merits of the original controversy. *Russo v. Dear*, 105 S.W.3d 43, 46 (Tex. App.—Dallas 2003, pet. denied). In *Russo*, the court opined that it would be improper to raise a personal jurisdiction issue in Texas when it had been fully and fairly litigated in the foreign jurisdiction. *Id.* at 47. "The Texas court's scope of inquiry is limited to whether questions of jurisdiction were fully and fairly litigated and finally decided by a sister state, and if so, personal jurisdiction may not be raised again in the Texas court." *Id.; Jonsson*, 270 S.W.3d at 327 ("After considering the evidence, we conclude appellees provided clear and convincing evidence to overcome the presumption of validity that the California judgment should be given full faith and credit in Texas. Because appellees established an exception to the California court's jurisdiction, specifically that service of process was inadequate under the California service of process rules, the trial court did not misapply the law to the established facts of

13

this case."); *see also Diesel Injection Sales & Serv. v. Diesel Heads & Parts Servs.*, No. 13-09-289-CV, 2010 Tex. App. LEXIS 2333, at **3–5 (Tex. App.—Corpus Christi Apr. 1, 2010, no pet.) (mem. op.).

## IV. JURISDICTION TO ENJOIN EXECUTION

Because jurisdiction is fundamental, we first address Counsel Financial's claims in its second issue that the trial court exceeded its jurisdiction by granting the anti-execution temporary injunction.

In this case, the 370th District Court of Hidalgo County enjoined execution on a judgment domesticated in the 285th District Court of Bexar County. A suit to enjoin the enforcement of the judgment of a court other than the one in which the action is brought is generally regarded as an impermissible collateral attack on that judgment. *Scott v. Graham*, 156 Tex. 97, 292 S.W.2d 324, 327 (Tex. 1956); *In re Cantu*, 961 S.W.2d 482, 486 (Tex. App.—Corpus Christi 1997, orig. proceeding); *Butron v. Cantu*, 960 S.W.2d 91, 94 (Tex. App.—Corpus Christi 1997, no pet.); *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex. App.—Houston [1st Dist.] 1993, writ denied); *Martin v. Stein*, 649 S.W.2d 342, 345 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

"Actions to stay proceedings in a suit shall be brought in the county in which the suit is pending." TEX. CIV. PRAC. & REM. CODE ANN. § 15.012 (West 2002). Actions to restrain execution of a judgment based on invalidity of the judgment or of the writ shall be brought in the county in which the judgment was rendered." *Id.* § 15.013 (West 2002). A suit to enjoin enforcement of a judgment must be brought in the court which rendered

14

the judgment. *See id.* § 65.023 (West 1997); *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856, 860–61 (Tex. App.—San Antonio 2003, no pet.); *McVeigh*, 849 S.W.2d at 915.

These provisions of the Texas Civil Practice and Remedies Code control not just venue of this type of suit, but also jurisdiction as well, so long as the judgment in question is valid on its face. *Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth*, 150 S.W.3d 617, 629 (Tex. App.—Austin 2004, no pet.); *Butron*, 960 S.W.2d at 95; *McVeigh*, 849 S.W.2d at 914. However, this jurisdictional limitation only applies to a suit "attacking the judgment, questioning its validity, or presenting defenses properly connected with the suit in which it was rendered, and which should have been adjudicated therein." *Zuniga.*, 119 S.W.3d at 860–61; *Kruegel v. Rawlins*, 121 S.W. 216, 217 (Tex. Civ. App.—Dallas 1909), *writ ref'd*, 103 Tex. 86, 124 S.W. 419, 419–20 (Tex. 1910); *Realty Trust Co. v. Gabert*, 40 S.W.2d 869, 869 (Tex. Civ. App.—Waco 1931, no writ).

In determining the application of these statutes to the instant case, we look to Leibowitz's live pleadings to see if he attacks the judgment, questions its validity, or presents defenses properly connected with the suit in which it was rendered and which should have been adjudicated in that suit. *See Zuniga*, 119 S.W.3d at 860–61. In his pleadings, Leibowitz asserted generally that the summary judgment was unenforceable. Leibowitz's claims for affirmative relief concern, inter alia, alleged breaches of the original promissory note and security agreement, Counsel Financial's rights under the security agreement, and Leibowitz's alleged rights to offset "any amounts that he may

15

owe under the Default Judgment and/or the Security Agreement against the amounts that CFS and its agents owe him as a result of their wrongful conduct as described herein." Leibowitz specifically asserts that:

> Leibowitz seeks the aid of this Court to put an end to CFS's piecemeal attempts to wrongfully collect the contested amounts due under the Note through the enforcement of the Security Agreement, and to provide a forum to allow Leibowitz to assert any offsets and/or recoupment he may have to the collection of the amount sought by CFS.

According to Leibowitz, "[a]ll of the claims raised by CFS relate to the rights of the parties under the Security Agreement and the Default Judgment."

As stated previously, the New York judgment has been domesticated in Texas pursuant to the UEFJA and is valid. Leibowitz's claims in the instant suit necessarily challenge that judgment and raise defenses that should have been adjudicated in New York. *See Russo*, 105 S.W.3d at 46. Thus, the underlying court lacked jurisdiction over the claims pertaining to execution and enforcement of the judgment. We sustain Counsel Financial's second issue.

Having so ruled, we need not address Counsel Financial's first issue contending that the trial court abused its discretion by enjoining enforcement of the judgment on grounds that Leibowitz failed to establish a probable right to recover or probable, imminent, irreparable harm. *See* TEX. R. APP. P. 47.1, 47.4. We likewise need not address Counsel Financial's fifth issue, through which it asserts that the trial court abused its discretion by enjoining enforcement of Counsel Financial's rights under the security agreement because Leibowitz failed to establish a probable right to recover or

16

probable, imminent, irreparable harm.[5]  *See id.*

### V. VOIDNESS

By its sixth issue, Counsel Financial asserts that the temporary injunction is void because it fails to specifically state why irreparable injury will occur if the temporary injunction is not granted.   Rule 683 of the Texas Rules of Civil Procedure states that every order granting an injunction must "set forth the reasons for its issuance" and "be specific in its terms."   TEX. R. CIV. P. 683.   The Texas Supreme Court "interpret[s] the Rule to require . . . that the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue."   *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (Tex. 1953).   Accordingly, the order must provide a "detailed explanation of the

---

[5] To show a probable right of recovery, an applicant need not establish that it will finally prevail in the litigation, but it must, at the very least, present some evidence that, under the applicable rules of law, tends to support its cause of action.   *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517, 519 (Tex. 1961); *INEOS Group Ltd. v. Chevron Phillips Chem. Co., LP*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.).   A party proves irreparable injury for injunction purposes by proving that damages would not adequately compensate the injured party or cannot be measured by any certain pecuniary standard.   *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied).   However, an injunction is not proper when the claimed injury is merely speculative.   *Frequent Flyer Depot, Inc.*, 281 S.W.3d at 228–29; *Matrix Network, Inc. v. Ginn*, 211 S.W.3d 944, 947–948 (Tex. App.—Dallas 2007, no pet.); *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 861 (Tex. App.—Fort Worth 2003, no pet.); *Jordan v. Landry's Seafood Rest. Inc.*, 89 S.W.3d 737, 742 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (op. on reh'g).   The party applying for a temporary injunction has the burden of production, which is the burden of offering some evidence that establishes the requisite elements of a temporary injunction.   *See, e.g., N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175, 177 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925 (Tex. App.—Dallas 2006, no pet.); *Dallas Anesthesiology Assocs., P.A. v. Tex. Anesthesia Group, P.A.*, 190 S.W.3d 891, 897 (Tex. App.—Dallas 2006, no pet.).

reason for the injunction's issuance." *Adust Video v. Nueces County*, 996 S.W.2d 245, 249 (Tex. App.—Corpus Christi 1999, no pet.). The explanation must include specific reasons and not merely conclusory statements. *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2010, no pet.). Mere recitals regarding harm are insufficient. *See e.g., id.* (holding that an order stating that plaintiffs "will suffer irreparable injury in their possession and use of the Subject Property in the event that the requested injunctive relief is not granted, that they have no adequate remedy at law, and that the requested injunctive relief is necessary to preserve the status quo pending final trial" to be insufficient); *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795–96 (Tex. App.—Dallas 2008, no pet.) (holding that an order that recited the required elements for relief was conclusory and void); *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that the mere recital of "irreparable harm" does not meet Rule 683's specificity requirements); *Monsanto Co. v. Davis*, 25 S.W.3d 773, 788 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) (concluding that a temporary injunction order was insufficiently specific where it stated that plaintiffs "will suffer probable injury"); *Byrd Ranch, Inc. v. Interwest Sav. Assoc.*, 717 S.W.2d 452, 453–55 (Tex. App.—Fort Worth 1986, no writ) (concluding that an order was insufficiently specific where it stated that the plaintiff "will suffer irreparable harm for which it has no adequate remedy at law"); *Univ. Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex. Civ. App.—San Antonio 1981, no writ) (same); *Gen. Homes, Inc. v. Wingate Civic Assoc.*, 616 S.W.2d 351, 353 (Tex. Civ. App.—Houston [14th Dist.]

1981, no writ) (finding that a temporary injunction order did not satisfy Rule 683 "because it only states the trial court's conclusion that immediate and irreparable harm will result if the injunction is not granted, with no specific reasons supporting the conclusion"); *Stoner v. Thompson*, 553 S.W.2d 150, 151 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (finding a temporary injunction order insufficient under Rule 683 and noting that "[t]he conclusion [in the order] that the situation is harmful [to the plaintiff] is not a reason why injury will be suffered if the interlocutory relief is not ordered").

This requirement for specificity is mandatory and must be strictly followed. *InterFirst Bank San Felipe, N.A. v. Paz Const. Co.*, 715 S.W.2d 640, 641 (Tex. 1986); *City of Corpus Christi v. Friends of the Coliseum*, 311 S.W.3d 706, 708–09 (Tex. App.—Corpus Christi 2010, no pet.); *Monsanto Co.*, 25 S.W.3d at 788; *Big D Props., Inc. v. Foster*, 2 S.W.3d 21, 22–23 (Tex. App.—Fort Worth 1999, no pet.). If an order fails to comply with these requirements, it is void and should be dissolved. *InterFirst Bank*, 715 S.W.2d at 641; *City of Corpus Christi*, 311 S.W.3d at 708; *Monsanto Co.*, 25 S.W.3d at 788.

In the instant case, the injunction provides that if the relief requested by Leibowitz is not granted:

a. CFS will continue to contact defense attorneys and insurance companies in Leibowitz's cases and threaten them with legal action if settlement monies are not paid directly to CFS and such interference with the settlement of Leibowitz's cases will cause irreparable harm to Leibowitz and his clients;

b. CFS will continue to communicate to defense attorneys and insurance companies in Leibowitz's cases that they are required

19

under the terms of the Security Agreement to disclose confidential client information to CFS, when they have no such duty, and such interference with the settlement of Leibowitz's cases will cause irreparable harm to Leibowitz and his clients;

c. CFS will continue to communicate to defense attorneys and insurance companies in Leibowitz's cases that payment to Leibowitz's clients will expose the Defendants to liability to CFS, when no such liability exists, and such interference with the settlement of Leibowitz's cases will cause irreparable harm to Leibowitz and his clients;

d. The continued interference by CFS in Leibowitz's cases has caused, and will continue to cause, severe irreparable harm to Leibowitz's business reputation, and impair his ability to maintain his practice, the degree of which is difficult to calculate and for which damages are no substitute; and

e. CFS will continue to do all the foregoing, during the pendency of this case, which will render the declaratory relief entered in this case ineffectual to protect Leibowitz and his clients.

The injunction further specifically states that if not granted, Counsel Financial will "continue to file numerous actions against Leibowitz," "continue the wrongful multiplication of proceedings with the intent to thwart this Court's jurisdiction, causing havoc and a waste of valuable judicial resources," "continue to harass and force Leibowitz and his clients, to their great personal and financial burden, and detriment, of having to defend themselves against vexatious proceedings, and the resulting disruption of the judicial process, risking the loss of his right to proceed to trial in Hidalgo County," "continue to attempt to prevent Leibowitz from fulfilling his contractual and legal obligations to his clients," and "alter the status quo and cause a miscarriage of justice."

20

We conclude this language complies with the requirements of Rule 683 because it provides specific reasons why irreparable injury will result in the absence of a temporary injunction. The trial court has set forth underlying facts to support its finding that irreparable injury will occur. *See, e.g., Robertson Transps.*, 261 S.W.2d at 553 (concluding that an injunction was sufficiently specific where it stated that the defendant "would interfere with the markets established by the plaintiffs and would probably divert freight tonnage and revenue from the plaintiff" and "that such interference with customers and markets and diversion of freight tonnage and revenues would result in irreparable and inestimable damage to the plaintiffs"); *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.) (concluding that an injunction set forth sufficient reasons for its issuance where it explicitly stated that the defendants had data entitled to trade secret protection and were using that data to compete with the plaintiff and the defendants' product would be priced lower than the plaintiff's which would lead to "incalculable loss of business goodwill"); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.) (concluding that an injunction was sufficiently specific where it stated that a business partner's actions prevented other parties "from realizing the significant loan values" in specified properties and significantly impaired their ability to pay amounts owed under a promissory note and that their business plan and ability to obtain financing on properties were "adversely affected in a way that cannot be effectively measured in dollars").

Accordingly, we overrule Counsel Financial's sixth issue.

21

## IV. ANTI-SUIT INJUNCTION

By its third and fourth issues, Counsel Financial attacks the anti-suit aspect of the trial court's temporary injunction. Texas courts have the power, through anti-suit injunctions, to prevent persons from proceeding with litigation filed in other state courts. *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex. 1986); *London Mkt. Insurers v. Am. Home Assur. Co.*, 95 S.W.3d 702, 706 (Tex. App.—Corpus Christi 2003, no pet.). When a suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state. *Gannon*, 706 S.W.2d at 305–06. However, this equitable power is to be exercised sparingly, and only in very special circumstances. *London Mkt.*, 95 S.W.3d at 706. The party seeking the injunction has the burden to show that a clear equity demands the injunction. *Id.* The applicant must demonstrate the potential for an irreparable miscarriage of justice in order to obtain the anti-suit injunction. *Id.* "There are no precise guidelines for judging the propriety of an anti-suit injunction; the circumstances of each situation must be carefully examined to determine whether the injunction is necessary to prevent an irreparable miscarriage of justice." *See AVCO Corp. v. Interstate Sw., Ltd.*, 145 S.W.3d 257, 262 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Gannon*, 706 S.W.2d at 307).

An anti-suit injunction is appropriate in four instances: (1) to address a threat to the court's jurisdiction; (2) to prevent the evasion of important public policy; (3) to prevent a multiplicity of suits; or (4) to protect a party from vexatious or harassing litigation.

22

*Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005) (citing *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996)). In addition to meeting the requirements necessary to obtain an anti-suit injunction, the traditional prerequisites to injunctive relief must be met by a party seeking an anti–suit injunction. *Cascos v. Cameron County Atty. (In re Cascos)*, 319 S.W.3d 205, 221 (Tex. App.—Corpus Christi 2010, no pet.) (combined appeal & orig. proceeding); *see Yarto*, 287 S.W.3d at 88 n.8 (collecting cases).

In reviewing the issuance of a temporary anti-suit injunction, we utilize an abuse of discretion standard. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *AVCO Corp.*, 145 S.W.3d at 262. A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Am. Int'l Specialty Lines Ins. Co. v. Triton Energy Ltd.*, 52 S.W.3d 337, 339 (Tex. App.—Dallas 2001, pet. dism'd w.o.j.) (quoting *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)). In reviewing the trial court's order, we draw inferences from the evidence in the manner most favorable to the trial court's ruling. *Ortiz v. Legal Concierge, Inc.*, 263 S.W.3d 385, 390 (Tex. App.—Dallas 2008, pet. denied).

By its fourth issue, Counsel Financial asserts that the trial court lacked jurisdiction to issue an anti-suit injunction. We disagree. Texas state courts have the power to restrain persons from proceeding with suits filed in other courts of this state by granting an "anti-suit injunction," abating proceedings in a second forum. *Gannon*, 706 S.W.2d at 305; *Henry v. McMichael (In re Henry)*, 274 S.W.3d 185, 189 (Tex. App.—Houston

23

[1st Dist.] 2008, pet. denied) (combined appeal & orig. proceeding). In applying Counsel Financial's logic, no trial court would be able to obtain subject matter jurisdiction to enjoin another court from litigating a matter unless the enjoined court agreed to be enjoined. This contention is not supported by case law on anti-suit injunctions. *See Harper*, 925 S.W.2d at 651; *Christensen*, 719 S.W.2d at 163; *Gannon*, 706 S.W.2d at 305; *see also Graybar Elec. Co. v. Gonzalez (In re Graybar Elec. Co.)*, Nos. 13-08-00073-CV, 13-08-00294-CV, 13-08-00333-CV, & 13-08-00341-CV, 2008 Tex. App. LEXIS 6868, at *20 (Tex. App.—Corpus Christi Aug. 26, 2008, no pet.) (combined appeal & orig. proceeding) (mem. op.). We overrule Counsel Financial's fourth issue.

In its third issue, Counsel Financial contends the trial court abused its discretion by granting the anti-suit temporary injunction because it does not come within any of the four bases recognized by the Texas Supreme Court for anti-suit injunctions. The trial court's order states, in relevant part:

> 4. The Court also finds that Leibowitz has established the existence of very special circumstances and the potential for an irreparable miscarriage of justice to warrant an anti–suit injunction, CFS has demonstrated that, if unrestrained, CFS will:
>
> > a. continue to file numerous actions against Leibowitz in all the cases in which they believe Leibowitz to have an interest and raise claims identical to claims in this case;
> >
> > b. continue the wrongful multiplication of proceedings with the intent to thwart this Court's jurisdiction, causing havoc and a waste of valuable judicial resources;

24

c. continue to harass and force Leibowitz and his clients, to their great personal and financial burden, and detriment, of having to defend themselves against vexatious proceedings, and the resulting disruption of the judicial process, risking the loss of his right to proceed to trial in Hidalgo County;

d. continue to attempt to prevent Leibowitz from fulfilling his contractual and legal obligations to his clients; and

e. alter the status quo and cause a miscarriage of justice.

The trial court's order invokes all four rationales for anti-suit injunctions. Drawing inferences from the evidence in the manner most favorable to the trial court's ruling, we nevertheless conclude that the facts underlying this case do not illustrate the "very special circumstances" and the "clear equity" required for issuance of the injunction. *London Mkt.*, 95 S.W.3d at 706.

The injunction states that Counsel Financial's interpleader was filed with the "intent to thwart this Court's jurisdiction" and that if the injunction was not issued, Leibowitz would be "risking the loss of his right to proceed to trial in Hidalgo County." While an anti-suit injunction may be issued to protect the court's jurisdiction, in the instant case, the trial court actually lacked jurisdiction over the claims pertaining to enforcement of the judgment. Thus, the order was not necessary to prevent a threat to the court's jurisdiction.

The anti-suit injunction also contains language suggesting that it was necessary to prevent the evasion of important public policy because Counsel Financial's intervention was "causing havoc and a waste of valuable judicial resources" and "the

25

resulting disruption of the judicial process." However, as stated previously, the judicial process anticipates that issues regarding the enforcement of a judgment are devoted to the court issuing the judgment. Because the underlying court lacks jurisdiction over the enforcement issues—and the Bexar County court has that jurisdiction—we conclude that the injunction was not necessary to protect the judicial process.

The temporary injunction also recites that it is necessary to prevent a multiplicity of suits. We note that first, Counsel Financial was not instituting new legal proceedings but was instead intervening in existing litigation. Second, Leibowitz has not pointed out any case prohibiting a judgment creditor from intervening in an ongoing action to collect a debt. Typically, the multiplicity argument supports issuance of an anti–suit injunction when a party files numerous lawsuits to re-litigate issues in different courts. *AVCO Corp.*, 145 S.W.3d at 266.

Finally, the injunction recites that it was necessary because of the vexatious and harassing nature of Counsel Financial's intervention. Texas cases that have approved injunctive relief to protect a party from vexatious or harassing litigation have done so based on evidence that a multiplicity of suits had been filed or on other evidence of harassment. *See, e.g., Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 299 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (concluding that an anti-suit injunction was warranted where appellant filed at least five lawsuits relating to the same judgment); *Chandler v. Chandler*, 991 S.W.2d 367, 403 (Tex. App.—El Paso 1999, pet. denied) (concluding that an anti-suit injunction was warranted where appellant filed ten lawsuits

26

attempting to relitigate matters which had been resolved against him and finding that the continuous barrage of lawsuits against appellant's former wife and all attorneys involved in case was vexatious and meant to harass); *In re Estate of Dilasky*, 972 S.W.2d at 767–68 (concluding that an anti-suit injunction was warranted where appellant filed at least seven lawsuits attempting to re-litigate same or similar issues); *In re Johnson*, 961 S.W.2d 478, 482 (Tex. App.—Corpus Christi 1997, no pet.) (concluding that an anti-suit injunction was warranted to protect the prevailing party from the continued issuance of temporary orders blocking enforcement of a judgment). Our review of cases deeming litigation "vexatious and harassing" leads us to conclude there is no justification for injunctive relief on that ground based on the specific facts and pleadings herein. *Cf. In re Johnson*, 961 S.W.2d 478, 482 (Tex. App.—Corpus Christi 1997, orig. proceeding) ("In the present case, the continued issuance of temporary orders blocking the enforcement of Butron's judgment against Cantu threatens the jurisdiction of the 138th District Court, as well as this Court's authority to settle the validity of that judgment on appeal. It has created a multiplicity of suits and has prevented Butron from obtaining satisfaction of his judgment. Accordingly, we conclude that an injunction from this Court is appropriate to protect Butron from further harassment of this nature.").

In sum, we find no evidence in the record showing that the anti-suit injunction was appropriate to prevent a multiplicity of lawsuits, to provide protection from vexatious or harassing litigation, or to prevent a threat to the court's jurisdiction or the evasion of important public policy. We sustain Counsel Financial's third issue and hold that the

27

trial court abused its discretion by issuing the anti–suit injunction.

## VII. CONCLUSION

Regarding the anti-execution component of the injunction, the issues initially decided by the New York judgment and which Liebowitz and Counsel Financial litigated in Bexar County, and then appealed through the San Antonio Court of Appeals to the Texas Supreme Court, are final, enforceable, and immune from collateral attack. Accordingly, the trial court lacked jurisdiction to entertain Leibowitz's pleas to enjoin execution and enforcement of those prior decisions. Regarding the anti-suit component of the injunction, the trial court's order was not void, but it erred in its analysis regarding the application of the facts to the four bases for issuance of an injunction. Accordingly, we reverse the trial court's order granting the temporary injunction and remand this case to the trial court for further action in accordance with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
1st day of July, 2011.

28